WAYNE et al. v. INLAND WATERWAYS CORPORATION.

No. 2948.

United States District Court
S. D. Illinois, N. D.

May 10, 1950.

Hunter, Kavanagh, McLaughlin & Bond and Eugene L. White and Thomas O. Hunter, all of Peoria, Ill., for libelants.

Howard L. Doyle, U. S. Atty., Marks Alexander, Asst. U. S. Atty., Harry Weak-ley, Asst. U. S. Atty., and John T. Casey, Dept. of Justice, Washington. D. C., for respondent.

ADAIR, District Judge.

1. Libelants, Carl Wayne, James B. Wayne and Lillian H. Wayne, d/b/a Wayne Bros., are residents and citizens of the Southern District of the State of Illinois, and the respondent, Inland Waterways Corporation, is a corporation of the United States Government in the District of Columbia, all of the capital stock of which is owned by the United States Government and said corporation was created by virtue of Title 49 U.S.C.A. § 151, 43 Stat. 360, c. 243, Section 1 and is a common carrier by water.

2. This is an action on a libel in personam in Admiralty wherein the respondent has consented to be sued by virtue of the Suits in Admiralty Act, 46 U.S.C.A. Chap. 20, 41 Stat. 525–528; and this Court has jurisdiction of the subject matter herein and of the parties hereto.

3. Respondent is the owner of Barge No. IWC556 and Barge No. IWC232 and said barges could on the date of the filing of said libel or during the pendency of this action be found within the territorial jurisdiction of the United States.

4. Prior to June 17, 1947, Barge No. IWC556 was placed by respondent at libelants' elevator at Oquawka, Illinois, and libelants loaded said barge with bulk, shelled, yellow and white corn of number 3 grade. Libelants completed loading the barge on June 17, 1947, and respondent issued to libelants an order bill of lading therefor, a true copy of said bill of lading being attached to respondent's Answer filed herein.

5. Prior to June 15, 1947, Barge No. IWC232 was placed by respondent at libelants' elevator at Burlington, Iowa, and libelants loaded said barge with bulk, shelled, yellow corn of number 3 grade. Libelants completed loading the barge on June 15, 1947 and respondent issued to libelants an order bill of lading therefor, a true copy of said bill of lading being

attached to respondent's answer filed herein.

6. After receipt of the bill of lading for Barge No. IWC556 libelants drew a draft on Cargill, Incorporated of St. Louis, Missouri, and forwarded the bill of lading, properly endorsed, and the draft through a bank to Cargill, Incorporated. The amount of the draft was arbitrarily computed on the basis of an estimated amount of corn as shown on the bill of lading. The draft was paid by Cargill. The corn covered by the bill of lading was shipped to Cargill pursuant to the terms of contracts of prior dates providing for the sale by Libelants to Cargill of certain large quantities of corn. Each of the contracts provided for delivery at St. Louis and that official weights and grades at destination would govern the price to be paid. Each contract provided for a certain price for number 2 corn with certain discounts for grades below number 2 through number 5 and market difference beyond. The price stated was f. o. b. St. Louis.

7. After receipt of the bill of lading for Barge No. IWC232, libelants drew a draft on Continental Grain Co. of St. Louis, Missouri, and forwarded the bill of lading, properly endorsed, and a draft through a bank to Continental Grain Company. The amount of the draft was arbitrarily computed on the basis of an estimated amount of corn as shown on the bill of lading. The draft was paid by Continental Grain Co. The corn covered by the bill of lading was shipped to Continental Grain Co. pursuant to the terms of a contract of prior date providing for the sale by libelants to Continental Grain Co. of a certain large quantity of corn. Said contract provided for delivery at St. Louis and that official weights and grades at destination would govern the price to be paid. Said contract provided for a certain price for number 2 corn with O. P. A. scale discounts for lower grades. The shipment was to be made f. o. b. Burlington, Iowa.

8. After official inspection of the corn showed it to be sample grade at St. Louis, both buyers sold the corn on a salvage basis. Both buyers then charged back to libelants, among other things not here relevant, the difference between the amount for which both buyers sold the corn and the market price of number 2 corn at St. Louis.

9. On June 17, 1947, Barge No. IWC556 had been loaded at Oquawka, Illinois, with 34,000 bushels of bulk, shelled, yellow and white corn, and on that date, to-wit, June 17, 1947, the respondent issued to the libelants its order bill of lading for such shipment.

10. On June 15, 1947, Barge No. IWC232 had been loaded at Burlington, Iowa, with 38,933 bushels of bulk, shelled, yellow corn, and on that date, to-wit, June 15, 1947, the respondent issued to the libelants its order bill of lading for such shipment.

11. Barge No. IWC556 and Barge No. IWC232 were left by the respondent moored at libelants' elevators at Oquawka, Illinois, and Burlington, Iowa, respectively, until June 26, 1947, on which date the barges were picked up by one of respondent's tow boats and thereafter they arrived at St. Louis, Missouri, on July 5, 1947.

12. The corn contained on both barges was inspected by official inspectors of the State of Missouri, licensed by the U. S. Department of Agriculture, on July 7th and July 9th, 1947, and both shipments were graded sample grade due to said corn being found to be in a heating, and/or musty, and/or sour condition.

13. The corn arrived at destination, St. Louis, Missouri, in a heating, and/or musty, and/or sour condition as a result of the unreasonable delay of the respondent in making delivery at St. Louis, Missouri.

14. The time from June 15, 1947 and June 17, 1947 (dates of issuance of the bills of lading covering said shipments) to July 5, 1947 was an unreasonable length of time for delivery of the shipments at their destination, St. Louis, Missouri.

15. The time from June 26, 1947 to July 5, 1947 was an unreasonable length of time for the corn to be in transit in tow from Oquawka, Illinois, and Burlington, Iowa, to St. Louis, Missouri, a distance of approximately 238 miles.

16. If the corn had been delivered to St. Louis, Missouri, within a reasonable time after June 15, 1947 and June 17, 1947,

it would have arrived at destination in the same condition as when delivered to respondent.

17. The average, acceptable and reasonable time after issuance of a bill of lading for shipment from Oquawka, Illinois, or Burlington, Iowa, to St. Louis, Missouri, by barge is from 3 to 8 days.

18. Respondent has failed to produce evidence sufficient to bring this cause of action within any of the exceptive provisions contained in respondent's bill of lading.

19. Libelants delivered 34,000 bushels of number 3 corn, to the respondent at Oquawka, Illinois, in fulfillment of a contract which called for a price as number 2 grade with various discounts if the corn was graded less than number 2 (the number of bushels is taken from weights at St. Louis, Missouri, upon arrival). The corn by reason of heating and becoming musty or sour in transit was discounted at 5¢ per bushel for 10,340 bushels, at 15½¢ per bushel for 16,146 bushels, at 16¢ per bushel for 5,370 bushels and at 17½¢ per bushel for 2,142 bushels. The discount for difference between number 2 and number 3 corn is 3¢ per bushel. Therefore, the injury to libelants in regard to this shipment was 2¢ per bushel for the 10,340 bushels, 12½¢ per bushel for the 16,146 bushels, 13¢ per bushel for the 5,370 bushels, and 14½¢ per bushel for the 2,142 bushels, respectively.

20. The libelants delivered 38,933 bushels of number 3 corn to the respondent at Burlington, Iowa, in fulfillment of a contract which called for a price as number 2 grade with various discounts if the corn graded less than number 2 (the number of bushels is taken from weights at destination). The discount for difference between number 2 and number 3 corn is 3¢ per bushel. The corn by reason of heating and becoming musty or sour in transit was discounted 35¢ per bushel, but since it was number 3 corn the injury caused by respondent is 32¢ per bushel. Therefore, the damages to which libelants are entitled arising out of the Burlington, Iowa, shipment are 32¢ times the number of bushels in the shipment.

21. The court finds that the libelants are entitled to recover from respondent the sum of $15,692.30.

Conclusions of Law

1. This court has jurisdiction of the subject matter of this action and of the parties.

2. This action is within the Maritime and Admiralty jurisdiction of this Court.

3. Libelants are the real parties in interest in this action, having borne the loss occasioned by the damage to the corn, and being original parties to the bills of lading.

4. Libelants have proven a prima facie case for recovery by proof of difference in quality of the corn upon delivery to the carrier and upon delivery by the carrier at destination.

5. Libelants have proven a prima facie case for recovery by proving an unreasonable and unexcused delay in delivery of the shipments of corn.

6. There is no evidence of record of facts bringing the respondent within any valid exceptive provision of its bill of lading or within any statutory or general exception to its common carrier liability for the damage sustained.

7. There is no evidence of record of any fact or facts excusing respondent's delay in making delivery of the shipments of corn.

8. The unreasonable and unexcused delay of respondent in making delivery of the shipments of corn was the proximate cause of the loss sustained by libelants.

9. Respondent is liable for the damage resulting from its unreasonable delay in delivery of the corn.

10. Respondent's responsibility for libelants' shipments commenced upon the dates of issuance of the bills of lading.

11. Libelants are entitled to a decree against respondent for their damages plus interest at four per cent (4%) from June 15, 1948, and for costs.